

## NUMBER 13-11-00758-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

BRIAN STEER,                                                                                                          Appellant,

v.

THE STATE OF TEXAS,                                                                                                Appellee.

### On appeal from the 94th District Court
### of Nueces County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Perkes
### Memorandum Opinion by Justice Rodriguez

A jury convicted appellant Brian Steer of one count of aggravated robbery and two counts of burglary of a habitation. *See* TEX. PENAL CODE ANN. §§ 29.03, 30.02 (West 2011). After Steer pleaded true to two prior felonies, the trial court assessed his punishment at seventy-five years in the Institutional Division of the Texas Department of

Criminal Justice.   By two issues, Steer complains that the trial court abused its discretion when it denied his motions for mistrial.[1]   We affirm.

## I.  STANDARD OF REVIEW AND APPLICABLE LAW

> An appellate court reviews a trial court's ruling on a motion for mistrial and motion for new trial using an abuse-of-discretion standard of review.   We view the evidence in the light most favorable to the trial court's ruling and uphold the trial court's ruling if it was within the zone of reasonable disagreement.   *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004).   We do not substitute our judgment for that of the trial court, but rather we decide whether the trial court's decision was arbitrary or unreasonable.   Thus, a trial court abuses its discretion in denying a motion for new trial [or a motion for mistrial] only when no reasonable view of the record could support the trial court's ruling.   *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004).

*Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).

> A mistrial is an appropriate remedy in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors.   *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004); *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000).   A mistrial halts trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile.   *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).   Whether an error requires a mistrial must be determined by the particular facts of the case.   *Id.*

> . . . .

> Because it is an extreme remedy, a mistrial should be granted "only when residual prejudice remains" after less drastic alternatives are explored.   *Barnett v. State*, 161 S.W.3d 128, 134 (Tex. Crim. App. 2005).   Less drastic alternatives include instructing the jury "to consider as evidence only the testimony and exhibits admitted through witnesses on the stand," and, questioning the jury "about the extent of any prejudice," if

---

[1] Steer also filed a motion for new trial, which was overruled as a matter of law.   *See* TEX. R. APP. P. 21.8(c) (providing that a motion for new trial is deemed denied when it is not ruled on by written order within seventy-five days of imposition of the sentence).   In that motion, Steer identified the same issues he raised in his motions for mistrial.   However, Steer framed his appellate issues as challenges to the trial court's denial of his motions for mistrial, and we will address them as such.   *See Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007) (explaining that the denial of a motion for mistrial and a denial of a motion for new trial are reviewed under an abuse of discretion standard); *Cueva v. State*, 39 S.W.3d 839, 856 (Tex. App.—Corpus Christi 2011, pet. ref'd) (same).

instructions alone do not sufficiently cure the problem. *Arizona v. Washington*, 434 U.S. 497, 521–22 (1978) (White, J., dissenting). Though requesting lesser remedies is not a prerequisite to a motion for mistrial, when the movant does not first request a lesser remedy, we will not reverse the court's judgment if the problem could have been cured by the less drastic alternative. *Young v. State*, 137 S.W.3d 65, 70 (Tex. Crim. App. 2004); *see also Wood*, 18 S.W.3d at 648 (concluding that the trial court did not abuse its discretion in denying the appellant's motion for mistrial when the appellant had not requested the less drastic remedy of a continuance).

*Ocon v. State*, 284 S.W.3d 880, 884–85 (Tex. Crim. App. 2009); *see Brewer v. State*, 367 S.W.3d 251, 253 (Tex. Crim. App. 2012). In other words, "[a]n appellant who moves for a mistrial without first requesting a less drastic alternative forfeits appellate review of that class of events that could have been cured by the lesser remedy." *Ocon*, 284 S.W.3d at 886–87 (citing *Barnett*, 161 S.W.3d at 134; *Young*, 137 S.W.3d at 70).

## II.     DISCUSSION[2]

### A.     The State's File

By his first issue, Steer complains that the trial court abused its discretion when it denied his motion for mistrial after the prosecutor displayed his case file before the jury. A red label with the words "REPEAT OFFENDER" appeared on the side of the file. Steer argues that his substantial rights were affected by the denial and that the error had a substantial and injurious effect or influence in determining the jury's verdict. Steer asks this Court, in the interest of justice, to grant a new trial, which should "proceed in accordance with the suggested and necessary policy change within the Nueces County District Attorney's office that all repeat offender labels be removed from the prosecutor's file prior to any jury trial."

---

[2] Because this is a memorandum opinion and the parties are familiar with the facts, we will not recite them here except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

Shortly before noon on the first day of trial, during the second witness's testimony, the following colloquy occurred outside the presence of the jury:

| | |
|---|---|
| [DEFENSE COUNSEL]: | The prosecutor has a folder with my client's name on it. It's a manila folder. It's legal size. And at the bottom of the folder, there's a red—a red stripe all the way across it, probably about an inch and a half high, and I would say in three-quarter inch letters, it says, "Repeat—" |
| THE COURT: | Repeat offender. |
| [DEFENSE COUNSEL]: | "Repeat offender," in bold, black lettering. The prosecutor in the courtroom is sitting probably about two feet from the last juror member. |
| THE COURT: | I think it's—I think the file is about three or four, but nevertheless, relatively close. |
| [DEFENSE COUNSEL]: | And the jury, to get to the jury room, they have to exit the seats that they're in and walk right past the prosecutor's desk and with that folder that says "Repeat Offender" on it right next to them and then into the room.<br><br>At this time, Your Honor, I would object that that—when the jury is walking by, if they're looking at it, then it will introduce into evidence character evidence; and at this time, we would request a mistrial on that. |
| THE COURT: | Okay. . . . |
| THE STATE: | Judge, the file in question, I would—I haven't measured in terms of the stripe that [Defense Counsel] is referring to or the lettering on it. Certainly, his client's name is handwritten in ink in a smaller—smaller font on the file. |

4

The—the positioning of this particular file, I think is undisputed was the lettering on a—on a smaller part of the file that is positioned away and to the side of the jury, and I do not think—and also that file was out for a very limited portion of this morning's testimony; but with that said, I would agree that that file was out at some point and it is now—the file is in my—my briefcase, and the—and should it come out again, the lettering has been taken off of that file; and I do not think—I do not think the jury saw that.

I mean, if that was to be developed, I suppose we could find that out, but I do not believe that to be the case. I do not believe that they did see a red stripe that they would know what that means. I do not believe they were in a position from where they were seated to—I believe they weren't in a position from where they were seated to see what the lettering contained.

. . . .

THE COURT:                    All right, [the motion for mistrial] is denied at this time.

Evidence referring to or implying extraneous offenses committed by the defendant may be rendered harmless by an instruction to disregard. *Coe v. State*, 683 S.W.2d 431, 436 (Tex. Crim. App. 1984). Steer did not request a curative instruction before moving for a mistrial. This decision forfeited his appellate relief because any error could have been cured by an instruction. *See Ocon*, 284 S.W.3d at 885; *see also Brewer*, 367 S.W.3d at 253. Less drastic alternatives were available, either by instructing the jury to consider as evidence only the testimony and exhibits admitted through witnesses on the stand or by questioning the jury about the extent of any prejudice, if instructions alone do

5

not sufficiently cure the problem. *See Ocon*, 284 S.W.3d at 885. We will not reverse the trial court's ruling on the motion for mistrial because a less drastic remedy could have cured the problem. *See id.* We, thus, conclude that the trial court did not abuse its discretion in denying this motion for mistrial. *See Webb*, 232 S.W.3d at 112. We overrule Steer's first issue.

## B. Steer's Post-Arrest Silence

By his second issue, Steer asserts that the trial court erred in denying his motion for mistrial after a State's witness, Detective Victor Trujillo, allegedly commented on his post-arrest silence in violation of the court's pre-trial order and Steer's Fifth Amendment right to remain silent. Steer contends that the State attempted to elicit inadmissible testimony by calling an investigator for the mere purpose of showing the jury that the defendant had refused to give a statement, in violation of the court's pre-trial order.

Detective Trujillo testified that he was assigned to investigate this case. His first step would have been to "review the report, the elements of the crime, determine who [he needed] to speak to first, or what [he needed] to do." Detective Trujillo explained that "in this case after reviewing the facts and speaking to the witnesses[, he] contacted [Steer]."

Following this testimony and outside the presence of the jury, Steer's counsel informed the trial court that he anticipated that the evidence was going to show that this detective talked to Steer in jail and that Steer invoked his Fifth Amendment right at that time. The trial court commented, "Well, he hasn't gotten that far yet." Steer's counsel urged that "[e]ven calling someone to say that they went to speak to someone" violated that person's "right to remain silent" and even "[i]f [the detective] doesn't say what happened next, the next logical inference is that Mr. Steer didn't talk to him." The trial

6

court replied, "You're going to have to show me some case law on that . . . ." Steer's counsel requested an instruction "[t]o disregard the last statement of the detective," and the trial court instructed the jury to "disregard that last answer from the detective." Steer's counsel also moved for a mistrial. However, the trial court did not rule on this motion. Instead, it said,

> Well, I'll carry it but you got to show me that you're entitled to it. . . . I don't think that you're entitled to it at this point but you might be able to find a case that says otherwise. . . . I mean, you can have time to research that tonight. I don't have to make a decision right this minute but we got a jury in the box, we got a witness sitting here . . . .

Although the trial court provided Steer's counsel with an opportunity to research the matter, Steer did not reurge this motion.

After both sides rested and closed, Steer's counsel did move for a mistrial, but this time the motion was based on the "cumulative error" of the presence of the prosecutor's file and the detective's testimony. The trial court denied this motion.

On appeal, Steer suggests that the trial court overruled his motion for mistrial that challenged Detective Trujillo's testimony. We disagree. It is clear from the record that the trial court did not rule on Steer's motion for mistrial based only on the detective's testimony.

"To preserve a complaint for appellate review, the complaining party must make a timely, specific request that the trial court refuses." *Brewer*, 367 S.W.3d at 253; *see* TEX. R. APP. P. 33.1. The error alleged on appeal must comport with the complaint submitted to the trial court. See TEX. R. APP. P. 33.1(a); *Heidelberg v.* State, 144 S.W. 3d 535, 537 (Tex. Crim. App.) ("The legal basis of a complaint raised on appeal cannot vary from that raised at trial."). Steer did not preserve error because the trial court did not rule on his

7

request for a mistrial following the detective's challenged testimony. *See Brewer*, 367 S.W.3d at 253. And Steer's "cumulative-error" motion at the conclusion of the evidence was not a timely request and did not comport with the issue before us. *See id.*

Even assuming that the trial court denied this motion for mistrial and Steer preserved error, we presume that the jury followed the trial court's instruction to disregard the challenged testimony. *See Drake v. State*, 123 S.W.3d 596, 604 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd) ("When objectionable testimony is elicited, inadvertently or deliberately, an appellate court presumes the jury will follow instructions to disregard the evidence.") (quoting *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987) (en banc)). On this basis, then, we conclude that the trial court did not abuse its discretion in denying this motion for mistrial. *See Webb*, 232 S.W.3d at 112.

We overrule Steer's second issue.

### III. CONCLUSION

We affirm the trial court's judgment.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
16th day of May, 2013.